## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BETH SCHIFFER FINE PHOTOGRAPHIC ARTS, INC., | : : : : | **OPINION** |
| Plaintiff, | : : | Civ. No. 10-05321 |
| v. | : : | |
| COLEX IMAGING, INC., WERNER WADON, and POLIELETTRONICA, S.p.A., | : : : | |
| Defendants. | : : | |

**Walls, Senior District Judge**

Plaintiff Beth Schiffer Fine Photographic Arts, Inc. ("Schiffer") brings the present action over its purchase of an allegedly defective photograph processing and printing machine. The Italian manufacturer PoliElettronica, S.p.A. ("PoliElettronica" or "Poli") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of the claims asserted against it in the First Amended Complaint. The Court grants the motion in part to dismiss the breach of contract claim as to defendant PoliElettronica, but denies the motion to dismiss the remaining claims.

### FACTUAL AND PROCEDURAL BACKGROUND

Schiffer is a New York corporation that provides professional photographic laboratory services to commercial and professional photographers. First Am. Compl. ¶¶ 10–12. In September 2005, Schiffer purchased a photograph printing and processing machine known as the PoliElettronica LBC 30" Compact LaserLab (the "Poli 2") through defendant Colex Imaging, Inc. ("Colex") for approximately $232,000, including finance charges. Id. ¶¶ 16–21. Colex is a New Jersey corporation that sells and services photographic equipment, both independently and allegedly as a sales representative or distributor for manufacturers. Id. ¶ 4. Werner Waden

**NOT FOR PUBLICATION**

("Waden"), incorrectly named as Werner Wadon, is Colex's principal and president. Id. ¶ 6; Answer to First Am. Compl., Affirm. Defenses, and Cross Claim 1. The Poli 2 was manufactured and marketed by Italian corporation PoliElettronica, whose principal place of business is in Italy. First Am. Compl. ¶¶ 7–8, 17. Schiffer alleges that Colex and Waden acted as PoliElettronica's authorized agents, distributors, and representatives in the United States. Id. ¶ 37.

Schiffer claims that the Poli 2 was defective and not suitable for its advertised purpose. In purchasing the machine, Schiffer allegedly relied on the defendants' misrepresentations that the Poli 2 was a "professional grade" machine and that it was a smaller and cheaper version of an earlier photograph processing and printing machine (the "Poli 1") that Schiffer already owned and had used for years without problem. Id. ¶¶ 19–20. Schiffer alleges that the Poli 2 has not worked, except for a few days, since its purchase and that the defendants' attempts to make it perform properly have been limited, ineffective, and unsuccessful. Id. ¶¶ 38, 43. Although the defendants allegedly insisted that the Poli 2 could and would be repaired, Schiffer maintains that the defendants and PoliElettronica's US agent Poli-Pro USA Inc. ("Poli-Pro USA") all undertook repairs in bad faith knowing that they were futile due to serious design flaws. Id. ¶¶ 41–42. All three defendants have now allegedly admitted to Schiffer that the Poli 2 cannot be repaired. Id. ¶ 45. In addition to losing the $232,000 purchase price, Schiffer argues that the company suffered at least $1.5 million in damage to its business and reputation because it was unable to serve clients after it advertised increased capacity and services. Id. ¶¶ 53–54, 66, 77, 85, 94.

Schiffer initially sued Colex, Waden, and PoliElettronica in the Southern District of New York in January 2009, but that court dismissed the case as to PoliElettronica in July 2010 for lack of personal jurisdiction. Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc., No. 09-cv-130, 2010 WL 2835543, at *5 (S.D.N.Y. Jul. 1, 2010). Schiffer voluntarily dismissed

NOT FOR PUBLICATION

the remaining claims against Colex and Waden and re-filed the action here in October 2010. On PoliElettronica's motion to dismiss the initial Complaint, this Court dismissed without prejudice four of the five counts against PoliElettronica in July 2011 for Schiffer's failure to sufficiently plead these claims. Opinion & Order 9, ECF No. 32.

On August 19, 2011, Schiffer filed its First Amended Complaint reasserting claims against PoliElettronica and the other defendants for breach of contract, breach of implied warranties, fraud, and a violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 et seq. ("NJCFA"). Colex and Waden brought a cross-claim on September 23, 2011 against PoliElettronica for liability arising from any alleged misrepresentations. Answer to First Am. Compl., Affirmative Defenses, and Cross Claim ¶ 112. On September 9, 2011, PoliElettronica again moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the First Amended Complaint fails to sufficiently plead the claims against it and that the dispute is subject to forum selection clauses in the Poli 2's product manual that requires litigation in Italy. This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b).

## STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 306 (3d Cir. 2007). Under Federal Rule of Civil Procedure 8(a)(2), the complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." At the same time, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v.

**NOT FOR PUBLICATION**

Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). As a result, the

complaint must contain more than "bare-bones allegations" or "threadbare recitals of the

elements of a cause of action." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)

(quoting Iqbal, 129 S.Ct. at 1949). The plaintiff must allege "enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary element." Phillips v. County of

Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

**DISCUSSION**

The Court grants in part and denies in part defendant PoliElettronica's motion to dismiss.

The Court grants the motion to dismiss the breach of contract claim against PoliElettronica

because the First Amended Complaint does not plausibly allege the existence of a contract

between the parties. Based on this finding, the Court denies the motion to dismiss based on

forum selection clauses in the product manual because there is no indication that they are

enforceable here. The Court also denies the motion to dismiss the remaining claims for breach of

implied warranty, violations of the NJCFA, and common law fraud because the First Amended

Complaint is sufficient to state plausible claims under New Jersey law and the alleged facts are

sufficient to support the application of New Jersey law at this stage.

**I.    Allegations of a Contract Between Schiffer and PoliElettronica**

Two arguments in the motion to dismiss turn on the extent to which an enforceable

contractual relationship existed between the parties. PoliElettronica moves to dismiss the breach

of contract claim on the grounds that Schiffer fails to adequately allege a contract between the

two parties. Mot. to Dismiss 15–16. At the same time, PoliElettronica moves to dismiss all the

claims against it by seeking to enforce forum selection clauses designating an Italian forum that

4

**NOT FOR PUBLICATION**

were included in the product manuals delivered with the Poli 2. Id. at 5–7. The Court previously found that Schiffer's initial Complaint did not sufficiently allege that a contractual relationship existed between Schiffer and PoliElettronica because it did not adequately allege that Colex and Waden were acting as PoliElettronica's agents in the sale of the Poli 2. Opinion & Order 5–6. Because the First Amended Complaint fails to correct the deficiencies in this alleged agency relationship, the Court grants the motion to dismiss the breach of contract claim as to PoliElettronica. The Court similarly denies PoliElettronica's motion to dismiss the remaining claims under the forum selection clauses because there is no indication at this stage that they are enforceable under any contractual relationship between the parties.

### a. Colex and Waden as Agents of PoliElettronica

The alleged contractual relationship supporting the breach of contract claim relies on Schiffer's allegations that Colex and Waden were functioning as PoliElettronica's agents in the sale of the Poli 2. The First Amended complaint states that Colex and Waden were PoliElettronica's "authorized agents, distributors, and representatives" in the United States that had actual or apparent authority to "act, speak for, and bind" the company. First Am. Compl. ¶ 37. To support this claim, the First Amended Complaint generally alleges that PoliElettronica "authorized and permitted" Colex and Waden to act on its behalf in these matters "through its conduct and communications." Id. It also alleges that Colex and Waldon "at all relevant times held themselves out to be" agents of PoliElettronica. Id. The Court finds that Schiffer does not plausibly allege that Colex and Waden functioned as PoliElettronica's agents acting on its behalf in the sale of the Poli 2 with either actual or apparent authority to bind the company.

The New Jersey Supreme Court has explained that an "agency relationship is created when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent

**NOT FOR PUBLICATION**

or otherwise consents so to act." <u>N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.</u>, 1 A.3d 632, 639 (N.J. 2010) (quoting <u>Restatement (Third) of Agency</u> § 1.01 (2006)). An agent acts under actual authority "when, at the time of taking the action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." <u>Id.</u> (quoting <u>Restatement (Third) of Agency</u> § 2.01). The agent's actual authority encompasses acts which the principal has expressly authorized as well as those that the principal has impliedly authorized. <u>Sears Mortg. Corp. v. Rose</u>, 634 A.2d 74, 79 (N.J. 1993). Implied authority can be inferred from the specific circumstances of the principal's relationship with the agent based on "the nature or extent of the function to be performed, the general course of conducting the business, or from particular circumstances in the case." <u>Id.</u> (quoting <u>Carlson v. Hannah</u>, 78 A.2d 83, 88 (N.J. 1951)). The court must look to the factual relationship between the parties and should not rely exclusively on any statement attempting to define the relationship. <u>Id.</u>

      To determine whether Colex and Waden had actual authority to bind PoliElettronica, the Court must look to evidence of mutual assent for Colex and Waden to enter into sales contracts on its behalf and under its control. The First Amended Complaint asserts that "Schiffer purchased a Poli 2 from Poli through its distributor, supplier, agent, and/or representative Colex, and Waden personally." First Am. Compl. ¶ 21. More specifically, Schiffer cites the Declaration of Paola Menegatti for the proposition that PoliElettronica "sold its products, including the Poli 2, to Colex knowing that Colex was purchasing such products for ultimate resale and purchasing such product for resale against pending orders." <u>Id.</u> ¶ 22, Ex.B. Schiffer's First Amended Complaint explains as background that this equipment is "not bought by distributors in bulk to be resold in the retail setting such as in the automobile industry," but is "purchased by

**NOT FOR PUBLICATION**

distributors only against firm customer orders, such as the one Schiffer placed in this case," because each machine "costs hundreds of thousands of dollars." Id. ¶ 25.

Where a distributor receives goods from a manufacturer for resale to a third party, as alleged here, the distributor is not necessarily acting as the manufacturer's agent. Instead, the question of whether the distributor is acting as an agent of the manufacturer or as an independent buyer "depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit." Restatement (Second) of Agency § 14J. To this end, the court should consider the nature of the relationship between parties, the course of the negotiations, and the specific terms of the transactions. See id. § 14J cmt. b (identifying several factors bearing on a distributor's relationship with a manufacturer, including whether the distributor gets legal title and possession of the goods, whether the distributor also sells the goods of another manufacturer, the extent to which the distributor can profit from setting the resale price at a higher level than the price paid to the manufacturer, and whether the distributor assumes risk of loss or the risk that the resale transaction will not be completed).

The facts alleged regarding the sale of the Poli 2 do not plausibly support the claim that Colex was acting on PoliElettronica's behalf or under its control, but instead suggest that Colex was acting primarily for its own benefit as an independent dealer. The First Amended Complaint explains that, at the outset, Waden "became aware that Schiffer was looking for an additional professional printer/processor, and urged Ms. Schiffer to allow him and Colex to find a professional grade printer/processor that would meet Schiffer's specific business needs and requirements." First Am. Compl. ¶ 15. Although Schiffer purchased the Poli 2, Colex also sold equipment from other manufacturers. Id. ¶ 4. The First Amended Complaint itself is silent as to the terms under which PoliElettronica provided the Poli 2 to Colex, but the attached Declaration

**NOT FOR PUBLICATION**

of Paola Menegatti outlines some of the details of this relationship that Schiffer argues "creates genuine issues of material fact as to the existence of an agency relationship" requiring further discovery. Opp'n to Mot. to Dismiss 25. See First Am. Compl. ¶ 22. Instead, the Menegatti Declaration further supports a finding that discovery is unlikely to reveal any evidence to support a finding that Colex was conducting business on PoliElettronica's behalf. PoliElettronica initially submitted the Menegatti Declaration in the initial action in the Southern District of New York to support its motion to dismiss for lack of personal jurisdiction. See Beth Schiffer Fine Photographic Arts, 2010 WL 2835543, at *1. Because the declaration was drafted for purposes of litigation, the Court approaches the document with caution and does not credit the declaration's conclusions regarding any alleged agency relationship. The Court only considers facts consistent with those otherwise alleged in the First Amended Complaint to which it is attached.

The Menegatti Declaration asserts that "PoliElettronica did not have any say in determining the price at which Colex resold the goods, how or when it advertised or resold the goods, or any other matter." Menegatti Decl. ¶ 15. "Once Colex purchased the goods from PoliElettronica, Colex was free to resell the goods on terms and conditions determined exclusively by Colex with no further compensation due to PoliElettronica." Id. In the specific transaction at issue here, the declaration asserts that Colex paid for and received delivery of the Poli 2 itself. Id. ¶ 11. These facts only support a finding that Colex was acting primarily for its own benefit and do not plausibly suggest that it was acting either on PoliElettronica's behalf or under its control. See N.J. Lawyers' Fund for Client Prot., 1 A.3d at 639.

This finding is consistent with the Southern District of New York's decision dismissing Schiffer's initial action as to PoliElettronica for lack of personal jurisdiction. Based on the complaint and affidavits submitted by the parties, the court found "no basis upon which to

NOT FOR PUBLICATION

conclude that Colex acted as PoliElettronica's agent for the purpose of establishing long arm jurisdiction." Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc., No. 09-cv-0130, 2010 WL 2835543, at *5 (S.D.N.Y. Jul. 1, 2010). The court reasoned that there was no evidence that Colex "transacted any business for the benefit, and with the knowledge and consent, of PoliElettronica, or that PoliElettronica exercised any control over Colex." Id.

Where a purported agent lacks actual authority to act on another's behalf, it may still bind a principal "by virtue of apparent authority based on manifestations of that authority by the principal." Sears Mortg. Corp., 634 A.2d at 79. Apparent authority "focuses on the reasonable expectations of third parties with whom an agent deals." N.J. Lawyers' Fund for Client Prot., 1 A.3d at 639 (quoting Restatement (Third) of Agency § 7.08 cmt. b). The relevant question is "whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question." Mann v. Interstate Fire & Cas. Co., 705 A.2d 360, 364 (N.J. Super. Ct. App. Div. 1998) (quoting Am. Well Works v. Royal Indemn. Co., 160 A. 560, 562 (N.J. 1932)).

The First Amended Complaint does not allege statements or actions by PoliElettronica that are sufficient to establish that Colex and Waden had apparent authority to bind PoliElettronica. As this Court previously explained, statements by Colex and Waden alone representing that they are agents of PoliElettronica cannot establish apparent authority for them to enter into contracts on behalf of PoliElettronica. Opinion & Order 4–5. Instead, apparent authority rests on the principal's manifestations of the alleged agent's authority and the "reasonable expectations of third parties with whom an agent deals." N.J. Lawyers' Fund for Client Prot., 1 A.3d at 639. See Sears Mortg. Corp., 634 A.2d at 79. The First Amended Complaint does not allege any specific communications between PoliElettronica and Schiffer

**NOT FOR PUBLICATION**

prior to the sale or any general statements advertising the Colex defendants as sales agents. Schiffer cites provisions in the product manual that PoliElettronica would only support repair by authorized agents and communications suggesting that PoliElettronica was working with Colex during the repair period. Opp'n to Mot. to Dismiss 24–25. These statements at most support a finding that Colex had apparent authority to assist with repair under the express warranty and not that the Colex defendants had authority to bind PoliElettronica in direct sales contracts. There is no evidence that further discovery could cure this defect because all statements or actions on which Schiffer could have reasonably relied are already known.

### b.  Sufficiency of Breach of Contract Claim

Schiffer claims that PoliElettronica breached an unwritten contract for the sale of the Poli 2. Under this theory, Schiffer made an offer to purchase the Poli 2 through PoliElettronica's agents Colex and Waden and PoliElettronica accepted this offer by mailing the Poli 2 with the accompanying product manuals. First Am. Compl. ¶ 69. See Opp'n to Mot. to Dismiss 14. PoliElettronica then allegedly breached the contract by "failing to produce goods, in working order," and by "failing to adequately service the defective Poli 2." First Am. Compl. ¶¶ 70–71. The First Amended Complaint initially based its claim in New Jersey common law and Article 2 of the Uniform Commercial Code, as adopted in New Jersey, NJ. Stat. Ann. §12A:2-101, et. seq. (the "UCC"). Id. ¶ 9. Schiffer now contends that the contract should instead be governed by federal law to the extent that application of the UCC is pre-empted by the United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983), 19 I.L.M. 671 (1980), reprinted at 15 U.S.C. App. (1998) (the "CISG"). Opp'n to Mot. to Dismiss 11–13. The Court finds that Schiffer fails to state a valid breach of contract claim under either CISG or New Jersey law.

NOT FOR PUBLICATION

Ratified by the United States on December 11, 1986, the CISG "applies to contracts of sale of goods between parties whose places of business are in different States . . . when the States are Contracting States." CISG Art. 1(1)(a). See Forestal Guarani S.A. v. Daros International, Inc., 613 F.3d 395, 397 (3d Cir. 2010). Italy and the United States are contracting parties to the CISG. See UNCITRAL, Status – United Nations Convention on Contracts for International Sale of Goods, http://www.uncitral.org/uncitral/en/uncitral_texts/sale_goods/1980CISG_status.html (last visited Mar. 12, 2012). The CISG is a self-executing treaty that preempts contrary provisions of Article 2 of the UCC and other state contract law to the extent that those causes of action fall within the scope of the CISG. U.S. Const., Art. VI; Medellin v. Texas, 552 U.S. 491, 504–05 (2008). See American Mint LLC v. GOSoftware, Inc., No. 1:05-cv-650, 2005 WL 2021248, at *2–3 (M.D. Pa. Aug. 16, 2005) (noting that "if the CISG applies to the contract at issue, it will pre-empt domestic sales laws that otherwise would govern the contract."). Outside the scope of the CISG, otherwise applicable state law governs the dispute. See Caterpillar Inc. v. Usinor Industeel, 393 F. Supp. 2d 659, 676 (N.D. Ill. 2005).

Under Article 4, the CISG "governs only . . . the rights and obligations of the seller and the buyer." Although the United States courts of appeals have yet to address the question of how far this extends, other district courts have found that this provision excludes from the scope of the CISG the rights and obligations of all parties that are neither the immediate buyer nor the immediate seller. Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd., No. 06-cv-3972, 2007 WL 2059239, at *3 (S.D.N.Y. Jul. 19, 2007); American Mint, 2005 WL 2021248, at *3. Because the CISG does not address the rights of third-parties, the treaty does not provide a cause of action for remote purchasers but also does not preempt applicable state common law or Article 2 of the UCC that otherwise govern the rights of remote purchasers. See Caterpillar Inc., 393 F. Supp. 2d at 676; Henry Deeb Gabriel, Contracts for the Sale of Goods: A Comparison of

NOT FOR PUBLICATION

U.S. and Int'l Law 37 (2d ed. 2009) ("[A] manufacturer that sells to an American wholesaler

may have an agreement subject to the CISG, but if the wholesaler sells to a retailer under an

agreement that is governed by the UCC, and the applicable state law provides for direct actions

under the UCC against an upstream seller, the manufacturer may be subject to a claim by the

downstream purchaser under the applicable state law.").

Accordingly, district courts have consistently found that, unless the buyer or seller is

acting through an agent who is selling the goods directly to a third party, a remote purchaser does

not have a cause of action to sue an upstream seller under the CISG. Instead, the rights and

obligations of remote purchasers are governed by the otherwise applicable state law. In

Caterpillar, the Northern District of Illinois found that Caterpillar could not state a claim under

the CISG against a foreign manufacturer where it found that the steel at issue in the suit had been

purchased by a Mexican subsidiary that had not been acting as Caterpillar's agent in the

purchase. 393 F. Supp. 2d at 675. Because Caterpillar's claim against the steel manufacturer was

outside the scope of the CISG, Caterpillar could only proceed as a downstream purchaser with

state law claims for breach of express and implied warranties under the UCC. Id. In Cedar

Petrochemicals, the plaintiff Cedar was a chemical dealer that sued a Korean supplier under the

CISG because the phenol it purchased for resale did not conform to the contract specifications.

2007 WL 2059239, at *1. The Southern District of New York denied Cedar's request to add the

remote Spanish purchaser as an additional plaintiff, finding that the remote purchaser was not a

party to the initial sales contract and therefore did not have standing under the CISG to sue the

Korean supplier. Id. at *3. Schiffer similarly is a third party that cannot maintain a cause of

action directly against PoliElettronica under the CISG because the Court has already established

that New Jersey agency law does not support the allegations in the complaint that Colex and

Waden acted as PoliElettronica's agents in the sale of the Poli 2.

NOT FOR PUBLICATION

The breach of contract claim also fails as alleged in the First Amended Complaint under New Jersey common law and Article 2 of the UCC. As this Court has previously explained, a breach of contract claim must adequately allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages . . . and (4) that the party stating the claim performed its own contractual obligations." Opinion & Order 6 (quoting Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007)). Because Schiffer still has not adequately alleged a contract between the parties, Schiffer cannot state a valid breach of contract claim against PoliElettronica under state common law and Article 2 of the UCC. Instead, Schiffer must instead rely on any statutory remedies available to third-parties under Article 2 of the UCC.

Because Schiffer cannot state a valid breach of contract claim against PoliElettronica under either the CISG or the otherwise applicable state law, this claim is dismissed as to defendant PoliElettronica.

### c.  Applicability of Forum Selection Clauses

PoliElettronica argues for the first time here that this Court should dismiss all claims as to PoliElettronica because the dispute is subject to forum selection clauses in the manual PoliElettronica shipped with the Poli 2. Mot. to Dismiss 5–7. PoliElettronica points to language on two pages outlining the terms of an express warranty that "any controversy will be handled by FORO GIUDIZIARIO DI ROVIGO (ITALY)," which it translates as "the judicial forum of Rovigo, Italy" or "the court of Rovigo, Italy." Mot. to Dismiss 5 (citing First Am. Compl., Ex. C, pp. 15, 31). PoliElettronica also identifies separate language in a section at the end of the manual titled "Competent Court" stating that "[f]or any possible dispute refer to the ROVIGO (ITALY) court." Reply to Mot. to Dismiss 5 (citing First Am. Compl., Ex. C, p. 34). Relying on its allegations of a direct unwritten contract with PoliElettronica, Schiffer responds that the forum selection clauses are not enforceable because the term was "not agreed to by the parties" but was

**NOT FOR PUBLICATION**

instead "unilaterally added to an already existing contract" that it alleges was formed when PoliElettronica accepted its offer to purchase the Poli 2. Opp'n to Mot. to Dismiss 18.[1]

In a federal diversity case, federal rather than state law governs the "effect to be given a contractual forum selection clause." Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995) (citing Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988)). The district court must first determine whether the dispute is subject to a particular forum selection clause raised by the moving party. See Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1295–96 (3d Cir. 1996). The court must then consider its enforceability. A forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)). The Third Circuit has explained that enforcement of a forum selection clause may be unreasonable where the court finds "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202–03 (3d Cir. 1983), overruled on other grounds, as recognized in Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149 (3d Cir. 1989).

There is no indication at this stage that the alleged forum selection clauses are enforceable against Schiffer's remaining claims. Although a court must accept the allegations of the complaint as true, the Court must determine as a preliminary matter whether the allegations

---

[1] Schiffer also responds that PoliElettronica should have enforced any forum selection clauses through a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) and has waived its right to bring this motion by failing to raise it in previous motions to dismiss under Federal Rule of Civil Procedure 12(g)(2). Opp'n to Mot. to Dismiss 16. This argument fails because the Third Circuit has recognized that a party may move to enforce a forum selection clause under Federal Rule of Civil Procedure 12(b)(6), which is not subject to waiver under these circumstances. See Salovaara v. Jackson Nat. Life Ins. Co., 246 F.3d 289, 298–99 (3d Cir. 2001).

NOT FOR PUBLICATION

support the enforcement of the forum selection clauses against the plaintiff. See E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 197 (3d Cir. 2001) (disregarding unsupported allegations that non-signatory plaintiff was a third-party beneficiary for purposes of defendant's motion to enforce the contract's forum selection clause designating an arbitral forum). The Court has already found for purposes of the breach of contract claim that Schiffer has not sufficiently alleged the existence of a contract between Schiffer and PoliElettronica or that Colex and Waden were acting as PoliElettronica's agents in the sale of the Poli 2. PoliElettronica effectively concedes this finding in arguing throughout the litigation that Schiffer's breach of contract claim against it should be dismissed for failure to allege a valid contract. Mot. to Dismiss 15–16. See D'Elia v. Grand Caribbean Co., No. 09-cv-1707, 2010 WL 1372027, at *5 (D.N.J. Mar. 30, 2010) (finding that a defendant could not use plaintiff's unsupported agency allegations "both as a shield and a sword" in arguing that it was sufficient to enforce forum selection clause but insufficient to state a valid claim). PoliElettronica also concedes that Schiffer does not otherwise bring a claim for breach of any express warranty under the terms of the manual that incorporates the forum selection clauses. Mot. to Dismiss 6. Absent a direct contractual relationship, neither party argues that Schiffer is a third-party beneficiary to a contract between PoliElettronica and Colex that incorporates the forum selection clauses that PoliElettronica seeks to enforce. See Coastal Steel Corp., 709 F.2d at 202–03.

PoliElettronica argues only that the dispute is subject to the alleged forum selection clauses because "the product manuals are integral to PoliElettronica's defenses," citing as example purported contractual limits on Schiffer's remedies. Although PoliElettronica is correct that a forum selection clause can be enforced based on an asserted defense, PoliElettronica cites only cases where that defense is based on a related contract directly negotiated between the parties. John Wyeth & Bro. Ltd. v. Cigna Int'l Corp., 119 F.3d 1070, 1076 (3d Cir. 1997)

**NOT FOR PUBLICATION**

(enforcing broadly worded forum selection clause in agreement allocating liability for certain losses under several insurance policies as part of a defense in a suit to later limit its liability under a different insurance policy); Parts Geek, LLC v. U.S. Auto Parts Network, Inc., No. 09-cv-5578, 2010 WL 1381005, at *7 (D.N.J. Apr. 1, 2010) (finding that a forum selection clause in plaintiff's advertising agreement with Google was enforceable as to negligence claim where the plaintiff alleged that Google owed a duty of care based in part on that agreement). Because the Court has already found that no contractual relationship existed between the parties, the Court does not find that forum selection clauses in the product manual are enforceable against Schiffer's remaining claims either directly or indirectly as part of any defense.

The Court denies the motion to dismiss based on the forum selection clauses at this time because the Court does not now find that there is a sufficient basis for invoking these clauses against Schiffer. If developments in these proceedings otherwise demonstrate that the forum selection clauses should apply here, the Court will afford the parties an opportunity to further brief their applicability and the reasonableness of enforcement.

## II. Breach of Implied Warranty Claim

Schiffer's First Amended Complaint also claims that the alleged defects in the Poli 2 breached PoliElettronica's implied warranties of merchantability and fitness for intended and ordinary purpose under New Jersey law.[2] First Am. Compl. ¶¶ 78–85. This Court previously found that the allegations in the initial complaint were sufficient to plausibly allege a breach of

---

[2] Although Schiffer cites only generally to Article 2 of the UCC under New Jersey law, the plaintiff invokes two separate sections of this statute. The implied warranties of merchantability and fitness for ordinary purpose are codified in Section 2-314. This section provides that "[u]nless excluded or modified (12A:2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J. Stat. Ann. § 12A:2-314(1). To be "merchantable," in pertinent part, the goods "must be at least such as (a) pass without objection in the trade under the contract description; and . . . (c) are fit for the ordinary purposes for which such goods are used. . . ." Id. § 12A:2-314(2). The implied warranty of fitness for an intended purpose is codified separately in Section 2-315. This section provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." Id. § 12A:2-315

**NOT FOR PUBLICATION**

implied warranty under New Jersey law. Opinion & Order 7–8. PoliElettronica argues here that

any implied warranty claim should instead be governed by New York law and fail as to

PoliElettronica for lack of privity of contract. Mot. to Dismiss 17–19. The Court finds at this

stage that the allegations are sufficient to support the application of New Jersey law.

To resolve a conflict of law question in a case brought under federal diversity

jurisdiction, a district court must "apply the forum state's choice of law rule." Gen. Star Nat'l

Inc. Co. v. Liberty Mut. Ins. Co., 960 F.2d 377, 379 (3d Cir. 1992). Under New Jersey law, the

court must first consider whether "an actual conflict exists" between the law alleged and any

other potentially applicable law. P.V. v. Camp Jaycee, 962 A.2d 453, 460 (N.J. 2008). To the

extent that the party seeking dismissal has raised an actual conflict and New Jersey law does not

have a statutory directive on the choice of law, the court must apply New Jersey's most

significant relationship test to the facts alleged. Id. at 459–60. Based on the Restatement

(Second) of Conflict of Laws, the most significant relationship test balances a variety of factors

including (a) the needs of the interstate and international systems, (b) the relevant policies of the

forum, (c) the relevant policies of other interested states and the relative interests of those states

in the determination of the particular issue, (d) the protection of justified expectations, (e) the

basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of

result, and (g) ease in the determination and application of the law to be applied. Id. at 458

(quoting Restatement (Second) of Conflicts of Laws § 6 (1971)). New Jersey law refers courts to

other sections of the Restatement for more specific guidance and as a starting point for applying

the most significant relationship test to particular types of cases. Id. at 458, 461.

Defendant PoliElettronica has raised a colorable argument that there is a conflict between

the New York and New Jersey law governing implied warranties available to remote purchasers

under the UCC. Although New York and New Jersey have both adopted the same provisions of

**NOT FOR PUBLICATION**

the UCC governing implied warranties of merchantability and fitness for a particular purpose, these provisions "left it to the courts to determine whether vertical privity should be required in a warranty action between a seller and a remote buyer." Spring Motors Distribs. Inc. v. Ford Motor Co., 489 A.2d 660, 676 (N.J. 1985). New Jersey courts have found that vertical privity is no longer required and that a remote purchaser can maintain an action against a manufacturer for economic loss based on these implied warranties. Id. at 676–77 (finding that privity is not required for a purchaser to assert a claim for economic loss under the implied warranty of merchantability); Duall Bldg. Restoration, Inc. v. 1143 E. Jersey Ave. Assocs., 652 A.2d 1225, 1229–30 (N.J. Super. Ct. App. Div. 1995) (extending holding of Spring Motors to include claims under the implied warranty of fitness for a particular purpose). New York appears to retain the traditional vertical privity requirement for economic loss under the implied warranty provisions of the UCC. See Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp., 504 N.Y.S.2d 192, 193–94 (N.Y. App. Div. 1986) (citing Arthur Jaffe Assoc. v. Bilsco Auto Serv., Inc., 448 N.E.2d 792, 792 (N.Y. 1983)). Although recognizing a potential conflict, the Court need not determine whether New York law would bar the claim asserted here because it finds at this stage that the facts alleged in the First Amended Complaint support the application of New Jersey law.

Under New Jersey choice-of-law law rules for contract-based claims, the court should apply the law of the forum with the most significant relationship to the parties and the contract. Forestal Guarani S.A. v. Daros Int'l, Inc., 613 F.3d 395, 401 (3d Cir. 2010) (citing State Farm Mut. Auto. Ins. Co. v. Estate of Simmons, 417 A.2d 488, 491–92 (N.J. 1980)). Where the parties have not validly chosen the law to be applied to a contract, the New Jersey Supreme Court has adopted the principles in Restatement (Second) of Conflicts of Laws § 188. Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co., 629 A.2d 885, 888 (N.J. 1993). Section 188 outlines several specific indicators for the court to consider including (a) the place of contracting, (b) the place of

**NOT FOR PUBLICATION**

negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. <u>Restatement (Second) of Conflicts of Laws</u> § 188(2) (1971).

At this stage, the facts alleged are sufficient to plausibly support the application of New Jersey law to the claim for breach of implied warranties. Although the First Amended Complaint is silent as to the specific location where any negotiations or performance of the sales contract took place, Colex is alleged to be a dealer of photograph processing equipment based in New Jersey. First Am. Compl. ¶ 4. Schiffer further alleges that Colex "made sales and furnished services in New Jersey." <u>Id.</u> ¶ 62. The resale transaction at the heart of this dispute in which Colex purchased the Poli 2 from PoliElettronica and resold it to Schiffer was therefore arguably conducted in New Jersey. More generally, rules governing the privity requirement for whether implied warranties should be extended to remote purchasers are part of broader policies for regulating commercial transactions in the state and for balancing the rights and obligations of different parties along the distribution chain under contract and tort law. <u>See</u> <u>Spring Motors Distribs.</u>, 489 A.2d at 674–75. Based on this policy analysis, the <u>Restatement (Second) of Conflicts of Laws</u> § 6 arguably favors applying the law of the state in which a dealer is located because it has the greatest policy interest in regulating these sales transactions. <u>See</u> <u>Mazzuocola v. Thunderbird Prods. Corp.</u>, No. 90-cv-0405, 1995 WL 311397, at *5–6 (E.D.N.Y. May 16, 1995) (finding under similar New York conflict of law rules that New Jersey, as the place of purchase, had the most significant interest in applying its privity rule to breach of implied warranty claims by a remote purchaser in New York that brought suit against a Minnesota boat manufacturer regarding a boat purchased from a New Jersey dealer).

NOT FOR PUBLICATION

Because Schiffer has sufficiently alleged a claim for breach of implied warranties of merchantability and fitness for intended and ordinary purpose under New Jersey law, the Court denies PoliElettronica's motion to dismiss as to this cause of action.

### III.    Fraud and NJCFA Claims

Schiffer also reasserts claims under New Jersey common law fraud and the NJCFA. In connection with the sale of the Poli 2, the First Amended Complaint alleges that PoliElettronica and its agents Colex and Waden misrepresented to Schiffer that the Poli 2 was a professional grade machine that was a smaller and cheaper version of the Poli 1. First Am. Compl. ¶¶ 62–63, 87–88. During the repair period, PoliElettronica allegedly misrepresented through Colex, Waden, and Poli-Pro USA that the Poli 2 could be repaired when PoliElettronica knew that repair was impossible due to serious design flaws. Id. ¶¶ 64, 89–90.

#### a.   Sufficiency of NJCFA and Common Law Fraud Claims

PoliElettronica moves to dismiss the NJCFA and common law fraud claims because the First Amended Complaint does not satisfy the applicable pleading standards. Mot. to Dismiss 11–12. The Court finds that both claims are stated with sufficient particularity under Federal Rule of Civil Procedure 9(b) and plausibility under Federal Rule of Civil Procedure 12(b)(6).

The NJCFA requires proof of (1) the defendant's use of "any method, act, or practice declared unlawful" under the statute, (2) an "ascertainable loss" by the plaintiff, and (3) a causal relationship between the unlawful conduct and the loss. N.J. Stat. Ann. § 56:8-19. See Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009). Unlawful practices are defined to include "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[ ] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J. Stat. Ann. § 56:8-2. See Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994). Because the provision

**NOT FOR PUBLICATION**

"specifies the conduct that will amount to an unlawful practice in the disjunctive," the "[p]roof of any one of those acts or omissions or of a violation of a regulation will be sufficient to establish unlawful conduct." Id. Knowledge and intent are required to establish an unlawful omission, but are not necessarily required for unlawful affirmative acts. Id. This section applies to unlawful practices used in connection with either "the sale or advertisement" of merchandise or "the subsequent performance" of the seller. N.J. Stat. Ann. § 56:8-2.

New Jersey common law fraud requires proof that the defendant (1) made a material misrepresentation of present or past fact, (2) with knowledge of its falsity and (3) with the intention that the other party rely thereon, (4) resulting in reasonable reliance by that party to its detriment. Jewish Center of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981).

Claims alleging New Jersey common law fraud and violations of the NJCFA based on fraudulent misrepresentations must be pled with the particularity required by Federal Rule of Civil Procedure 9(b). Opinion & Order 3–4 (citing Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 524 (D.N.J. 2008); Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 510 (D.N.J. 1999)). A plaintiff must "state with particularity the circumstances constituting fraud," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). See Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). "The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which defendants are charged" in order to give them an opportunity to respond meaningfully to a complaint, "and to prevent false or unsubstantiated charges." Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998), abrogated on other grounds, as recognized in Forbes v. Eagleson, 228 F.3d 471 483–84 (3d Cir. 2000). To this end, the complaint must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999). The Third Circuit cautions that courts should "apply the

NOT FOR PUBLICATION

rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." Rolo, 155 F.3d at 658.

This Court previously dismissed NJCFA and common law fraud claims against PoliElettronica for failure to state these claims with sufficient particularity. The Court found that the initial Complaint made no specific allegations as to the conduct of PoliElettronica and failed to allege sufficient facts to support the inference that Colex or Waden had apparent authority to speak and act on PoliElettronica's behalf. Opinion & Order 3–5. The First Amended Complaint cures this defect by providing additional detail regarding the nature of PoliElettronica's alleged misrepresentations and each defendant's role at each stage of the transaction. The level of detail is sufficient to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Rather than focusing on the specificity of Schiffer's allegations, PoliElettronica primarily challenges the sufficiency of those allegations here.

PoliElettronica's conduct as alleged here is sufficient to support these claims based on the allegations of both direct and indirect misrepresentations. Although the First Amended Complaint continues to allege that Colex, Waden, and Poli-Pro USA acted as PoliElettronica's agents in making certain misrepresentations, the Court need not decide at this stage whether Schiffer sufficiently alleged an agency relationship for purposes of the tort claims. See Restatement (Second) of Agency § 14J cmt. d ("One who buys goods from another and hence is not the other's agent in sales of the goods, may nevertheless be his agent in matters connected with the goods. Thus, he may have authority to make representations and warranties for the seller.").

Under both the NJCFA and New Jersey common law fraud, the defendant can be liable for misrepresentations that it makes indirectly to the defrauded party without the intermediary being the defendant's agent. To this end, the NJCFA has been interpreted "to encompass the acts

**NOT FOR PUBLICATION**

of remote suppliers . . . whose products are passed on to a buyer and whose representations are made to or intended to be conveyed to the buyer." Perth Amboy Iron Works, Inc. v. Am. Home Assur. Co., 543 A.2d 1020, 1026 (N.J. Super. Ct. App. Div. 1988) aff'd, 571 A.2d 294 (N.J. 1990). See O'Loughlin v. Nat'l Cmty Bank, 770 A.2d 1185, 1194 (N.J. Super. Ct. App. Div. 2001) (reiterating "that indirect promises were actionable and privity was not required" for a claim under the NJCFA). Under New Jersey common law fraud, "[i]ndirect reliance allows a plaintiff to prove a fraud action when he or she heard a statement not from the party that defrauded him or her but from that party's agent or from someone to whom the party communicated the false statement with the intention that the victim hear it, rely on it, and act to his or her detriment." Kaufman v. i-Stat Corp., 754 A.2d 1188, 1195 (N.J. 2000). See also Port Liberte Homeowners Ass'n, Inc. v. Sordoni Constr. Co., 924 A.2d 592, 601 (N.J. Super. Ct. App. Div. 2007) ("A plaintiff need not hear the misrepresentation from the defendant directly for there to be actionable fraud: '[W]here false representations are made to one person with the intent that they be communicated to others for the purpose of inducing the others to rely upon them, they may form the basis of an action for fraud by those others.'") (quoting Metric Inv., Inc. v. Patterson, 244 A.2d 311, 314 (N.J. Super. Ct. App. Div. 1968).

The First Amended Complaint sets forth sufficient facts to plausibly allege that PoliElettronica directly and indirectly made misrepresentations to Schiffer. Schiffer claims that PoliElettronica represented to potential purchasers through Colex and Waden that the Poli 2 was a professional grade machine developed for the professional and commercial photography market that was a smaller and cheaper version of the Poli 1 but otherwise nearly identical. First Am. Compl. ¶¶ 18–20. Based on alleged statements by Colex and Waden, Schiffer claims that PoliElettronica made these specific representations "with the express understanding that Colex, and Waden individually, would extend these representations to potential purchasers of the Poli

**NOT FOR PUBLICATION**

2." Id. ¶¶ 20, 36. Schiffer insists that PoliElettronica "targets the end user, not the distributor" in all of its sales and marketing efforts. Id. ¶ 24. Schiffer also alleges that PoliElettronica represented in marketing materials targeting end users like Schiffer that the Poli 2 was a professional grade machine with functionality designed for that market segment. Id. ¶¶ 19, 56, Ex. A. During the repair period, PoliElettronica allegedly "remained actively involved with and controlled its agents, Colex, Waden and Poli-Pro USA, in attempts to mollify Schiffer." Id. ¶ 42. Schiffer claims that PoliElettronica made misrepresentations directly to Schiffer and indirectly through Colex, Waden, and Poli-Pro USA that the Poli 2 could be repaired despite knowing this was impossible due to serious design flaws. Id. ¶¶ 41–42, 46. To support these allegations, Schiffer attaches an email directly from a PoliElettronica employee and correspondence from Poli-Pro USA mentioning PoliElettronica's involvement. Id. ¶¶ 33–34, Exs. D–E.

PoliElettronica argues that these alleged misrepresentations are insufficient to support claims under the NJCFA and common law fraud because they at most constitute "puffery," meaning a statement of opinion rather than a factual misrepresentation. See Black's Law Dictionary (9th ed. 2009) (defining "puffing" as the "expression of an exaggerated opinion — as opposed to a factual misrepresentation — with the intent to sell a good or service."). Puffery is not actionable either under New Jersey's common law fraud doctrine or as a misrepresentation under the NJCFA. See Rodio v. Smith, 587 A.2d 621, 624 (N.J. 1991) (finding that the statement "You're in good hands with Allstate" was "not a statement of fact" required for a common law fraud or related NJCFA claim, but was instead "nothing more than puffery"). But see Gennari v. Weichert Co. Realtors, 691 A.2d 350, 366 (N.J. 1997) (finding that a real estate agent's statements regarding a builder's qualifications and the quality of its homes were affirmative misrepresentations rather than "mere puffery"). The statements allegedly made by PoliElettronica and those authorized to make representations on its behalf rise above the level of

**NOT FOR PUBLICATION**

puffery to the extent that they include specific statements of fact regarding the nature and quality of the product, its suitability for use in a particular market segment, its similarity to earlier products, the existence of a design defect, and the feasibility of repair. See First Am. Compl. ¶¶ 56–65. At this stage, the Court finds that these alleged factual misrepresentations support Schiffer's NJCFA and common law fraud claims.

PoliElettronica further argues that Schiffer fails to state a claim for an "unconscionable commercial practice" under the NJCFA. Characterizing the NJCFA claims as nothing more than "untimely and defective warranty claims," PoliElettronica argues that a breach of warranty alone does not violate the NJCFA and that Schiffer must also allege "substantial aggravating circumstances" to demonstrate an unconscionable commercial practice. Reply to Mot. to Dismiss 14–15. See Cox, 647 A.2d at 462. Because the Court has already found that the alleged misrepresentations are sufficient to support the NJCFA claim, it need not consider at this time whether the alleged conduct is also sufficient to be actionable as an unconscionable commercial practice under the NJCFA.

### b.  Choice of Law for Consumer Fraud Claim

PoliElettronica finally argues that the NJCFA claim should be dismissed because the facts alleged in the First Amended Complaint do not support the application of New Jersey law and the claim would be barred by the statute of limitations under New York law. The Court finds that the facts alleged are sufficient at this stage to plausibly support the application of the NJCFA claim under New Jersey conflict of law rules.

As explained, the Court must first consider whether there is an actual conflict between the NJCFA and New York law. Camp Jaycee, 962 A.2d at 460. PoliElettronica makes a reasonable argument that an actual conflict may exist regarding the statute of limitations applicable to consumer fraud claims. See Bayside Chrysler Plymouth Jeep Eagle, Inc., v. Ma,

NOT FOR PUBLICATION

No. DC-9699-02, 2006 WL 1449783, at *3 (N.J. Super. Ct. App. Div. May 26, 2006) (finding an actual conflict between the NJCFA and New York consumer protection law because the statute of limitations is six years for a New Jersey law claim under N.J. Stat. Ann. § 2A:14-1 but only three years for certain New York consumer fraud claims under N.Y. Gen. Bus. Law § 349 and N.Y. C.P.L.R. 214). See also Gaidon v. Guardian Life Ins. Co. of Am., 750 N.E.2d 1078, 1082–83 (N.Y. 2001).

Like the conflict of law analysis for contract claims, New Jersey applies the substantial relationship test to fraud and misrepresentation claims under the general principles outlined in Restatement (Second) Conflict of Laws § 6. See Cooper v. Samsung Elecs. Am., Inc., 374 F. App'x. 250, 254–55 (3d Cir. 2010). Under Restatement (Second) of Conflict of Laws § 148(2), the court weighs several factors including (a) where the plaintiff acted in reliance upon the defendant's representations, (b) where the plaintiff received the representations, (c) where the defendant made the representations, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, (e) where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) where the plaintiff was to render performance under a contract which he has been induced to enter by the false representations of the defendant. Id. at 255. When the plaintiff acts in reliance on the defendant's false representations in the same state where the false representations were made and received, that state's law presumptively applies. Restatement (Second) of Conflict of Laws § 148(1). See Cooper, 374 F. App'x. at 255.

Although a final choice of law determination will require development of additional facts bearing on the factors outlined in the Restatement, the facts alleged plausibly support the application of the NJCFA to Schiffer's fraud and misrepresentation claims. Schiffer alleges that the violations of the NJCFA occurred both during the sales negotiations and during the repair

**NOT FOR PUBLICATION**

period. The Court has established that the First Amended Complaint adequately alleges that the resale transaction was conducted in New Jersey for purposes of the choice of law analysis for the breach of implied warranty claims. Based upon these allegations, the Court could find that PoliElettronica made the initial alleged misrepresentations through Colex and Waden in New Jersey and that Schiffer received those representations, acted in reliance upon them, and rendered payment for the Poli 2 in New Jersey. As PoliElettronica notes, the Poli 2 was allegedly located at Schiffer's place of business in New York during the repair period and Schiffer received and relied upon at least some of the alleged misrepresentations in New York at that time. See First Am. Compl. ¶¶ 34, 41, 50. Although these factors could provide some support for applying New York law, these alleged facts alone are not sufficient at the motion to dismiss stage for the Court to find under the fact-specific conflict of law analysis that New York rather than New Jersey law should clearly apply.

Although PoliElettronica cites other cases from this district that have applied the law of the plaintiff's home state, these cases are distinguishable because Schiffer is not alleged to have purchased the Poli 2 in its home state. Mot. to Dismiss 13–14. In each case, the court found only that claims should be governed by the law of each plaintiff's home state where that party was deemed to have relied on the fraudulent conduct rather than the defendant's home state where the challenged conduct was formulated. Each case found or assumed for the purposes of the conflict of law analysis that plaintiffs either purchased the product or paid for services in their home state. See Maniscalco v. Brother Int'l Corp., 793 F. Supp. 2d 696, 710 (D.N.J. 2011) (applying consumer fraud law of the home state where the plaintiffs were found to have purchased and used allegedly defective multi-function office machines); Payne v. Fujifilm U.S.A., Inc., No. 07-cv-385, 2010 WL 2342388, at *8 (D.N.J. May 28, 2010) (applying, for purposes of class certification, the consumer fraud law of the class member's home state where each was assumed

**NOT FOR PUBLICATION**

to have purchased an allegedly defective camera); <u>Agostino v. Quest Diagnostics, Inc.</u>, 256

F.R.D. 437, 463 (D.N.J. 2009) (applying, for purposes of class certification, the consumer

protection law of each class member's home state where each was assumed to have received and

paid bills for medical testing that were part of allegedly fraudulent billing practices).

Because Schiffer has alleged violations of the NJCFA and New Jersey common law fraud

with sufficient particularity and plausibility at this stage, the Court denies PoliElettronica's

motion to dismiss as to these claims.

## CONCLUSION

The Court grants in part and denies in part PoliElettronica's motion to dismiss the First

Amended Complaint. The Court dismisses without prejudice the breach of contract claim only as

to PoliElettronica for its failure to sufficiently allege a valid cause of action. The Court denies

the motion to dismiss the remaining claims against PoliElettronica because the First Amended

Complaint states valid causes of action under New Jersey law. The Court also denies the motion

to dismiss based on the forum selection clauses incorporated in the product manual.

March 19, 2012

**/s/ William H. Walls**

United States Senior District Judge