NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BETH SCHIFFER FINE PHOTOGRAPHIC ARTS, INC., | : : : | **OPINION** |
| Plaintiff, | : : | No. 10-cv-5321 (WHW) |
| v. | : : | |
| COLEX IMAGING, INC., WERNER WADON, and POLIELETTRONICA, S.p.A., | : : : | |
| Defendants. | : : | |

**Walls, Senior District Judge**

This action is before the Court on motion by Defendant PoliElettronica, S.p.A. ("PoliElettronica," "Poli" or "Defendant") for summary judgment. This motion is decided without oral argument under Federal Rule of Civil Procedure 78(b). The motion is granted in part and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Beth Schiffer Fine Photographic Arts ("Plaintiff") is a New York corporation that provides professional photographic laboratory services to commercial and professional photographers. Am. Compl. ¶¶ 10-12. Beth Schiffer ("Ms. Schiffer") is the principal of the corporation. Pl.'s Responsive Statement to Def.'s Rule 56.1 Statement, ¶ 11, ECF No. 95.  In September 2005, Plaintiff purchased a photograph printing and processing machine known as the "PoliElettronica LBC 30" Compact LaserLab (the "Poli 2") through former defendant Colex Imaging, Inc. ("Colex") for approximately $232,000, including finance charges. Id. ¶¶ 16-21. Colex is a New Jersey corporation that sells, services and manufactures photographic equipment, both for itself and as a dealer for others. Id. ¶ 4. Werner Waden ("Waden"), incorrectly named as

1

NOT FOR PUBLICATION

Werner Wadon, is Colex's president. *Id.* ¶ 6. The Poli 2 was manufactured and marketed by

Italian corporation PoliElettronica, whose principal place of business is in Italy. *Id.* ¶¶ 7-8, 17.

PoliElettronica sold the Poli 2 with a product manual which included a one-year express

warranty, but this warranty extended only to Colex. *See* Poli Dep. 21:12-15, Sept. 19, 2013 (ECF

No. 92-1) ("It was only for Colex."); Pl.'s Responsive Statement to Def.'s Rule 56.1 Statement,

¶ 24 (agreeing with statement that warranty extended to Colex).

     In purchasing the machine, Plaintiff allegedly relied on Defendant's representations that

the Poli 2 was a "professional grade machine" and that, though smaller, cheaper and slower, it

was "almost identical" to an earlier photograph processing and printing machine (the "Poli 1")

that Plaintiff already owned and had used for years without problem. *Id.* ¶¶ 19-20. In particular,

Plaintiff claims Defendant misrepresented whether it was the Poli 2's printer or processor which

made it slower than the Poli 1: Defendant allegedly represented that only the processor was

slower, when in fact both parts were slower. Waden Dep. 87:1-9, Feb. 26, 2013 (ECF No. 92-3);

Schiffer Dep. 216:16-21, Nov. 28, 2012 (ECF No. 92-2).

     Plaintiff alleges that the Poli 2 has not worked, except for a few days, since its purchase.

Am. Compl. ¶¶ 38, 43. Defendant and Colex tried to fix the Poli 2 but failed, and Plaintiff

maintains that they fraudulently represented that repair was possible; apparently everyone now

agrees that it was not. *Id.* ¶¶ 41-42, 45, 64. In addition to losing the $232,000 purchase price,

Plaintiff claims it suffered at least $1.5 million in damages to its business and reputation because

it was unable to serve clients after it advertised increased capacity and services. *Id.* ¶¶ 53-54, 66,

85, 94.

     Plaintiff initially sued Colex, Waden, and PoliElettronica in the Southern District of New

York in January 2009, but that court dismissed the case as to PoliElettronica in July 2010 for

NOT FOR PUBLICATION

lack of personal jurisdiction. *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*,

No. 09-cv-130 (LTS), 2010 WL 2835543, at *5 (S.D.N.Y. Jul.1, 2010). Plaintiff re-filed in this

district. In July 2011, the Court dismissed without prejudice four of the five counts against

PoliElettronica, ECF No. 32 (July 12, 2011), and Plaintiff responded by filing an amended

complaint, ECF No. 39.

On March 19, 2012, this Court dismissed the breach of contract claim for failure to allege

the existence of a contract. *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*,

No. 10-cv-05321, 2012 WL 924380, at *7-8, ECF No. 51. For the other claims, the Court

rejected PoliElettronica's argument that the transaction was governed by a forum selection clause

requiring that any disputes be heard in Italy, but left open the possibility of enforcing it upon a

further showing. *Id.* at *9-10. It also denied the motion in all other regards, finding that the

amended complaint adequately stated claims of breach of implied warranty, *id.* at *10-11, breach

of the New Jersey Consumer Fraud Act ("NJCFA") and common law fraud, *id.* at *12-15.

A few months after that opinion, on August 16, 2012, Colex and Waden settled with

Plaintiff and stipulated to dismissal, but remained in the action because Defendant

PoliElettronica has asserted cross claims against them. ECF No. 76. As part of the settlement

agreement, Waden agreed to serve, without compensation, as an expert witness for Plaintiff, to

pay Plaintiff $10,000, and to provide free parts and service to the Poli 1 printer for 60 days.

Waden Dep. 67:12-70:4. Discovery proceeded, including depositions.

The following counts of the amended complaint remain in this action: Count I, breach of

the NJCFA, Am. Compl. ¶¶ 55-66; Count III, Breach of the Warranty of Merchantability and

Fitness for Intended and Ordinary Purpose, *id.* ¶¶ 78-85; and Count IV, Fraud and Deceit, *id.*

¶¶ 86-94. Plaintiff also seeks attorney's fees, costs and treble damages. *Id.* ¶¶ 95-97.

NOT FOR PUBLICATION

On October 21, 2013, PoliElettronica moved for summary judgment on these claims. ECF No. 90. Plaintiff's opposition and Defendant's reply followed. ECF Nos. 97, 98.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law, and a dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Where there is a genuine dispute as to a material fact, the court must view that fact in the light most favorable to the non-movant. *Scott*, 550 U.S. at 378.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

NOT FOR PUBLICATION

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A non-moving party must make a greater showing to survive a motion for summary judgment

than a motion to dismiss. "In addition to the fact that a plaintiff presumably has had an

opportunity to obtain [facts] during discovery, a motion for summary judgment is reviewed

under a much more stringent standard than a motion to dismiss for failure to state a claim."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *ALA, Inc. v. CCAIR,*

*Inc.*, 29 F.3d 855, 863 n.17 (3d Cir.1994)). Still, a court may "dismiss[] an action for failure to

state a claim on the face of the pleadings on a motion for summary judgment," which is

"equivalent to a motion to dismiss." *Melo v. Hafer*, 912 F.2d 628, 633 (3d Cir. 1990), *aff'd*, 502

U.S. 21 (1991).

## DISCUSSION

**I.    The Forum Selection Clauses**

In its opinion of March 2012, the Court rejected Defendants' effort to dismiss the

amended complaint under the product manual's forum selection clauses but withheld ruling on

their enforceability in light of further developments. 2012 WL 924380 at *3, 10. Defendant now

argues that, because Plaintiff has received benefits under the contract, it is subject to the forum

selection clauses under a theory of direct benefits estoppel. *See* Def.'s Reply at 3. Plaintiff

responds that it is improper for Defendant to attempt to "circumvent the law of the case" and that

deposition testimony from Mr. Poli suggests the warranties were voided or otherwise did not

extend to Plaintiff. Pl.'s Opp'n to Def.'s Mot. Summ. J. at 4.

The Court in its March 2012 opinion explicitly reserved the question of whether the

forum selection clauses apply. It now concludes that they do not.

NOT FOR PUBLICATION

    **a)  Overview**

In the Third Circuit, in a federal court with diversity jurisdiction, whether to enforce a contractual forum selection clause is a matter of federal law. *Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 84 (3d Cir. 2006) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995)). "Forum selection clauses are entitled to great weight, and are presumptively valid." *Id.* (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983) (citing *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10–11 (1972)).

Ordinarily, a party not a signatory to a contract cannot be bound by terms of that contract. *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001). As a general matter, the Third Circuit is reluctant to enforce a contractual clause against a non-party, unless "accepted principles of agency or contract" make it appropriate. *Id.* at 202. The Circuit in *Bouriez v. Carnegie Mellon* explained that these accepted principles, in the arbitration setting, are the theories of "third party beneficiary, agency and equitable estoppel." 359 F.3d 292, 294 (3d Cir. 2004). Though many cases handle forum selection clauses and arbitration clauses similarly or even find the distinction "irrelevant," *see Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1298 n.9 (3d Cir. 1996), the circumstances under which a forum selection clause can be enforced against a non-signatory appear to be narrower: only if the party is a third-party beneficiary to the contract or it is "foreseeable" that it will be. *Coastal Steel*, 709 F.2d at 202. Courts in this district consistently find that only a party which "is closely related to the contractual relationship" falls into this foreseeability exception. *D'Elia v. Grand Caribbean Co., Ltd.*, No. 09-cv-1707 (NLH), 2010 WL 1372027, at *3 (D.N.J. Mar. 30, 2010) (citing *Coastal Steel*, 709 F.2d at 203). In *D'Elia*, the court concluded that an equitable estoppel theory was cognizable only if the non-signatory had a "close relationship" to the contract. *Id.* at *5 n.10.

NOT FOR PUBLICATION

Defendant leans heavily on a Fifth Circuit decision, *Hellenic Investment Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514 (5th Cir. 2006), for its direct benefits estoppel theory—i.e., that Plaintiff is estopped from avoiding the forum selection clause because it has availed itself of benefits under the warranty. *See* Def.'s Mot. for Summ. J. at 3. But there does not appear to be any Third Circuit acceptance of this theory. The Court concludes that Plaintiff may be bound by the forum selection clause found in the warranty between PoliElettronica and Colex only if it is a third party beneficiary of that warranty or it was "closely related to the contractual relationship." Neither is the case.

**b)  Plaintiff is not an intended third party beneficiary.**

Whether a party is a third party beneficiary is a question of law for the court. *Pierce Associates, Inc. v. Nemours Found.*, 865 F.2d 530, 535 (3d Cir. 1988). Because it is an issue of substance rather than procedure, it is governed by the state law of the forum. *Id.*; *see also Berel Co. v. Sencit F/G McKinley Assocs.*, 710 F. Supp. 530, 537 (D.N.J. 1989).

In New Jersey, "[t]he principle that determines the existence of a third party beneficiary status focuses on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." *Broadway Maint. Corp. v. Rutgers, the State Univ.*, 90 N.J. 253, 259 (1982). In *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, the Seventh Circuit applied the New Jersey rule from *Broadway Maintenance* and explained the crucial distinction between *knowledge* that a third party will benefit and *intent* that it will: "In order to establish third-party beneficiary status, a plaintiff must show more than that the contracting parties acted against a backdrop of knowledge that the plaintiff would derive benefit from the agreement." 868 F.2d 908, 912 (7th Cir. 1989). There, a remote supplier knew that a buyer "was purchasing the equipment for resale" and that plaintiff's property was listed as the delivery location; these facts

7

NOT FOR PUBLICATION

were not sufficient to confer third party beneficiary status. *Id.* The party attempting to assert third party beneficiary status bears the burden. *Id.* at 910.

Defendant has not met its burden of demonstrating that Plaintiff is a third party beneficiary of the warranty between PoliElettronica and Colex. The warranty does not name or reference Plaintiff, and Bruno Poli said repeatedly in his deposition that Colex was the sole intended beneficiary of the warranty:

- Q. Was it your understanding that the warranty was for the benefit of the end user who purchased the machine? A. It was only for Colex. Poli Dep. 21:12-15.
- Q. Assuming Colex made no separate warranty to its customer and just gave your manual which had this warranty contained in it, would you honor that warranty if a claim was made by a customer of Colex? A. I would say no. *Id.* at 27:13-18.

Though PoliElettronica may well have *known* that Plaintiff would be a beneficiary of the warranty, there has been no showing that it *intended* such.

**c) Plaintiff is not closely related to the contract.**

Even if Plaintiff is not an intended third party beneficiary of the warranty, it may be still be bound by the forum selection clause if it is "closely related to the contractual relationship" so that it is foreseeable that it would be bound. It is not.

The "closely related" exception is a narrow one. Courts in this district typically find that non-signatories are "closely related" only in the context of an individual non-signatory who is employed by—or the principal of—a corporate entity which is a signatory. *See Affiliated Mortgage Prot., LLC v. Tareen*, No. 06-cv-4908 (DRD), 2007 WL 203947, at *3 (D.N.J. Jan. 24, 2007) (employees of contracting corporation are "closely related to the contractual relationship"); *Four River Exploration, LLC v. Bird Res., Inc.*, No. 09-cv-3158 (JAP), 2010 WL 216369, at *3 (D.N.J. Jan. 15, 2010) (president of contracting corporation is closely related); *Foley & Lewis Racing, Inc. v. Burling*, No. 07-cv-972 (JEI), 2008 WL 544655, at *3 (D.N.J.

NOT FOR PUBLICATION

Feb. 27, 2008) (defendant who signed contract as CEO but sued as individual is closely related);

*Sahara Sam's Oasis, LLC v. Adams Companies, Inc.*, No. 10-cv-0881 (RMB), 2010 WL

3199886, at *6 (D.N.J. Aug. 12, 2010) (signatory's sales representative is "closely related").

Plaintiff does not fall within this exception.

**d) Conclusion**

Because Plaintiff is neither a third party beneficiary nor closely related to the warranty

between PoliElettronica and Colex, it is not bound by the forum selection clauses found in that

warranty.

**II.   Fraud claims**

Plaintiff brings two types of fraud claims: one under the NJCFA, Am. Compl. Count I

¶¶ 55-66, and one for common law fraud, *id.* Count IV ¶¶ 86-94. Because Plaintiff has asserted

state law claims, the Court must consider which of the possibly applicable laws should apply.

Plaintiff has brought its claim under New Jersey law, but Defendant argues for New York law.

**a) Choice of Law**

A federal court with diversity jurisdiction must apply the choice of law principles of the

forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). In New Jersey,

the relevant test is the "most significant relationship" test of the Restatement (Second) of

Conflict of Laws, which has two steps: checking for an "actual conflict" and, if one exists,

determining the state with the "most significant relationship." *P.V. v. Camp Jaycee*, 197 N.J.

132, 142-44 (2008). Courts must apply this test "issue-by-issue," meaning the court must

determine which forum has the most significant relationship to each cause of action. *Id.* at 143;

*see also Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006). In the first step, the court

decides if an actual conflict exists because "the choice of one forum's law over the other will

determine the outcome of the case." 15A C.J.S. Conflict of Laws § 30 (2013). If there is no

NOT FOR PUBLICATION

conflict or only a "false conflict," where "the laws of the two jurisdictions would produce the same result on the particular issue presented," the substantive law of the forum state applies. *Id.* § 31; *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997). If there is an actual conflict, the court proceeds to the second step and must determine which jurisdiction has the "most significant relationship to the claim." *Camp Jaycee*, 197 N.J. at 143; *see Maniscalco v. Brother Int'l Corp.*, 709 F.3d 202, 206-07 (3d Cir. 2013). This analysis relies on factors outlined in the Restatement (Second) of Conflict of Laws and varies depending on the nature of the claim, though always with an eye to the general principles of Restatement § 6, the "cornerstone" of the Restatement. *Camp Jaycee*, 197 N.J. at 140 (quoting Eugene F. Scoles et al., Conflict of Laws § 2.14 (4th Ed. 2004)).

For claims involving fraud or misrepresentation, including claims under state consumer fraud statutes, the relevant Restatement section is § 148. *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 708 (D.N.J. 2011). Section 148(2) counsels that where the plaintiff acted in reliance in a state other than where the representations were made, the court should consider the following factors:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010) (quoting Rst. (2d) Conflicts § 148(2)).

NOT FOR PUBLICATION

In its March 2012 opinion, this Court found that the NJCFA and New York Consumer Protection Act ("NYCPA") actually conflict. 2012 WL 924380, at *15. The Court found that although Defendant had cited some facts which "could provide some support for applying New York law, these alleged facts alone are not sufficient at the motion to dismiss stage for the Court to find under the fact-specific conflict of law analysis that New York rather than New Jersey law should clearly apply." *Id.* at *16.

Now that the facts have been more fully developed, it is clear that the state with the more significant relationship to this claim is New York. Section 148 factors (a) and (b) point to New York because Plaintiff received the alleged representations at its workspace in New York and relied on them there. Factor (c) could point to New Jersey, because it is arguable that Defendant made the representations from there. Factor (d) points to New York or Italy, where Plaintiff and Defendant are respectively located. Factor (e) points to New York because that is where the Poli 2 is located. Factor (f) points to New York because the facts indicate that Plaintiff rendered payment from there. Previously the Court had left open the possibility that it "could find that . . . Schiffer received [the allegedly false] representations, acted in reliance upon them, and rendered payment for the Poli 2 in New Jersey." March 2012 Mot. to Dismiss Opin., 2012 WL 924380 at *16. But Plaintiff has not produced evidence in support. Whether the machine briefly passed through New Jersey, a fact the parties dispute, is immaterial; it would not make New Jersey's relationship to the alleged fraud more significant than New York's. Although this Court had found previously that Plaintiff's claim under the NJCFA was adequate for pleading purposes, it now finds, on a fuller factual record, that the appropriate law to apply is the NYCPA.

For the common law fraud claim, however, no actual conflict exists between the potentially applicable laws. In New York, the elements of common law fraud are "a material

NOT FOR PUBLICATION

misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). The elements are the same in New Jersey. *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172 (2005); *Jewish Ctr. of Sussex Cnty. v. Whale*, 86 N.J. 619, 624 (1981). Privity is not required for a claim of fraud in New York. *Metral v. Horn*, 624 N.Y.S.2d 177, 179 (N.Y.A.D. 2nd Dep't 1995) ("[A] cause of action sounding in fraud does not require the existence of a relationship of privity or something close to privity between the parties."). Neither is it required in New Jersey. *See* March 2012 Mot. to Dismiss Opin., 2012 WL 924380, at *13 ("[T]he defendant can be liable for misrepresentations that it makes indirectly to the defrauded party without the intermediary being the defendant's agent.").[1] Because no actual conflict exists, the Court applies the law of the forum state, New Jersey.

The Court assesses Count I under New York law and Count IV under New Jersey law.

**b) NYCPA**

1) *Statute of Limitations*

Defendant argues that if the NYCPA applies, Plaintiff's claim is untimely under that statute's three-year statute of limitations. Def.'s Mot. for Summ. J. at 9 (ECF 90-6). Because Plaintiff purchased the Poli 2 in September 2005, the argument goes, but did not file a lawsuit in this Court until October 15, 2010, the claim is untimely. *Id.*

In New York, the statute of limitations begins to run on any cause of action "when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001). A private right of action for violation of the NYCPA's prohibition of deceptive acts

---

[1] For this reason, Defendant's resuscitation of its argument that it cannot be liable for fraud because Colex was not its agent is, once again, unavailing. Def.'s Mot. for Summ. J. at 17-18.

NOT FOR PUBLICATION

and practices, N.Y. Gen. Bus. Law § 349(h) (McKinney), accrues when plaintiff has been injured by the deceptive act or practice. *Gaidon*, 96 N.Y.2d at 210. Where an injury is ongoing, "a cause of action accrues anew every day." *1050 Tenants Corp. v. Lapidus*, 735 N.Y.S.2d 47, 49 (N.Y.A.D. 1st Dep't 2001).

Though Plaintiff acquired the Poli 2 in September 2005, it alleges that its injuries and Defendant's misrepresentations were continuous and ongoing, extending at least until 2008, if not to the present day. *See, e.g.*, Am. Compl. ¶¶ 33, 64. Plaintiff's suit is timely.

2) *The "consumers at large" requirement*

But the NYCPA, like many states' consumer fraud statutes, requires a showing that the alleged behavior poses some threat to the general public. A party hoping to make a claim under the NYCPA "must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). In other words, "the deceptive act or practice may not be limited to just the parties." *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 772 (N.Y.A.D. 2nd Dep't 1995) (citing *Oswego Laborers*, 85 N.Y.2d at 25). In addition, "clearly not cognizable under the statute, are large, private, single-shot contractual transactions," such as those involving "complex arrangements, knowledgeable and experienced parties and large sums of money." *Id.* at 773.

The Poli 2 is not a consumer-oriented product. As even Plaintiff states, "These machines are not bought by distributors in bulk to be resold in the retail setting such as in the automobile industry." Am. Compl. ¶ 25.

3) *Conclusion*

Because Plaintiff's claim is of the sort which New York courts find to be "clearly not cognizable" under the NYCPA, summary judgment is granted to Defendant on Count I of Plaintiff's complaint for statutory consumer fraud.

NOT FOR PUBLICATION

### c)  New Jersey Common Law Fraud

Where the claim at issue is an allegation of fraud, the non-movant on summary judgment bears a "burden of coming forward with evidence which could lead a jury to find clear and convincing proof of fraud and preponderant proof of [] misrepresentation." *Moffatt Enters., Inc. v. Borden Inc.*, 807 F.2d 1169, 1174 (3d Cir. 1986); *see also Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998) (quoting *Moffatt Enters.*, 807 F.2d at 1174).

### 1)  *New Jersey standard*

As noted, a cause of action for New Jersey common law fraud requires a plaintiff to prove "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gandi*, 184 N.J. at 172-73.

Generally, an allegedly false statement is material "if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999) (citation and quotation marks omitted); *accord Voilas v. Gen. Motors Corp.*, 170 F.3d 367, 376 (3d Cir. 1999) (applying New Jersey law), *Suarez v. E. Int'l Coll.*, 428 N.J. Super. 10, 33  (App. Div. 2012). Materiality is ordinarily a question of fact, but "[t]he court may withdraw the case from the jury if the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." Restatement (Second) of Torts § 538 (1977), cmt. e.

Unlike a claim under the NJCFA, the "knowledge of falsity" factor means that a seller is only liable for common law fraud if the plaintiff demonstrates that the defendant's statement was false when made. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 605 (1997). Though "conditions of a person's mind may be *alleged* generally," Fed. R. Civ. P. 9(b) (emphasis added),

14

NOT FOR PUBLICATION

the summary judgment standard is less forgiving. A plaintiff "must present affirmative evidence" to defeat a summary judgment motion, "even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257.

2) *Application*

The amended complaint accuses Defendant of making various misrepresentations during the period leading up to the sale of the Poli 2 and in the years during which Plaintiff tried and failed to repair it. *See, e.g.*, Am. Compl. ¶¶ 56, 57, 61-64, 87-89. Many of the alleged misrepresentations are about the quality of the Poli 2: "the nature and quality of the product, its suitability for use in a particular market segment, its similarity to earlier products," and "the existence of design defect." March 2012 Mot. to Dismiss Opin., 2012 WL 924380, at *13-14, March 19, 2012. As example, the amended complaint identifies statements that "the Poli 2 was a professional grade printer processor which produces high quality, digital, chromatic prints," Am. Compl. ¶ 56, and that "the Poli 2 was almost identical to the Poli 1" and developed for "the professional photography market," *id.* ¶¶ 57, 87.

In March 2012, this Court found that these pleadings were sufficiently particular for Federal Rule of Civil Procedure 9(b) and that the alleged misrepresentations "rise above the level of puffery to the extent that they include specific statements of fact regarding the nature and quality of the product." March 2012 Mot. to Dismiss Opin., 2012 WL 924380, at *13-14. Plaintiff leans on that result in its opposition to Defendant's motion for summary judgment. Pl.'s Opp'n to Def.'s Mot. Summ. J. at 7. But a different standard applies on summary judgment. With the exception of the allegation regarding the speed of the printer motor, these allegations have not been supplemented by facts sufficient to create a genuine issue of material fact for trial.

NOT FOR PUBLICATION

3)  *A genuine issue of material fact exists regarding the printer speed representations.*

Plaintiff has identified only one set of "specific statements of fact regarding the nature and quality of the product" sufficient to survive summary judgment: those regarding which part of the machine caused the Poli 2 to be slower than the Poli 1. Though Plaintiff admits it knew the Poli 2 as a whole was slower, it says Defendant falsely attributed this speed differential to the processor rather than the printer motor.[2] Pl.'s Opp'n to Def.'s Mot. Summ. J. at 7. This is potentially material because a slower *processor* would likely produce prints comparable to the Poli 1's, but a slower *printer motor* would make the machine far more susceptible to vibrations than the Poli 1 and produce inferior prints. *See* Pl.'s Opp'n to Def.'s Mot. Summ. J. at 8 ("[T]his difference of speed made the Poli 2 four times as sensitive to vibration as the Poli 1.").

Plaintiff claims this was not just an omission, but an affirmative misrepresentation. As Mr. Waden testified, "I was told that the printer part is the same." Waden Dep. 87:6-9. A year and a half after Plaintiff bought the machine, Mr. Waden learned that this was false, but only after finally succeeding in getting Mr. Poli on the phone. Waden Dep. 84:9-12, 100:1-101:8. Ms. Schiffer similarly testified that her understanding of the slower speed on the Poli 2 was attributable to "[o]nly the processor. Not the printer, which is what gave the – caused the problem." Schiffer Dep. 216:16-21. Mr. Poli was unable to identify any time when Defendant disclosed the speed of the printer motor before his phone call with Mr. Waden. Poli Dep. 63:20-22, 65:16-17, 66:13-19, 67:22-68:3.

Defendant, in response, points out that the Poli 2's manual clearly disclosed the machine's susceptibility to vibration. In Chapter 4, "Installation, Connection and Placing,"

---

[2] Plaintiff seems to attribute the problem either to the "printer motor" or "printer laser." The Court understands the motor to drive the laser and determine its speed, so they are interchangeable for this purpose.

NOT FOR PUBLICATION

alongside an image of an outstretched hand signaling "stop," is the following: "***Placement and vibrations***. *For the best results, it is necessary to take extreme care in positioning LaserLab; it must be placed on a **stable floor, without vibrations and oscillations**. The presence of heavy traffic, railways or underground in the proximity of the labs can generate vibrations, and these vibrations damage the results of the prints.*" ECF No. 90-2 at 101, 106 (emphasis in original). Plaintiff does not dispute that Ms. Schiffer "thoroughly reviewed the product manuals." Pl.'s Resp. to Def.'s St. of Mat. Facts ¶ 29. She also admitted that she was warned by Mr. Waden "that these printers are extremely vibration sensitive," but said that she followed the instructions for placing the machine and believed it would be adequate to take the same precautions she had taken with the Poli 1. Schiffer Dep. 65:2-10. In essence, Plaintiff argues that the vibration disclaimers were inadequate because they failed to disclose the severity of the problem and the sensitivity of the Poli 2 relative to the Poli 1.

There is a genuine issue of fact whether Defendant in fact represented to Colex and Plaintiff that the Poli 2, while slower than the Poli 1, had a printer motor the same speed as the one in the Poli 1, or if he simply omitted this fact. The manuals' disclaimers would not suffice to make such an omission or misrepresentation immaterial. It is also a question of fact whether Plaintiff reasonably relied on this representation or omission in assuming its machine would be no more sensitive to vibrations than the Poli 1, which worked fine in Plaintiff's Manhattan workspace. Summary judgment as to these alleged misrepresentations is denied.

4) *There are no genuine issues of material fact regarding the general quality and feasibility of repair representations.*

The rest of Plaintiff's fraud allegations fall short. Plaintiff has not adequately shown that Defendant knowingly made false statements about the quality of the Poli 2 and the prints it produces or the feasibility of repairing the machine. Am. Compl. ¶¶ 56, 46, 87.

NOT FOR PUBLICATION

Though Plaintiff has had problems with its printer, it has failed to make any showing that Defendant knew the Poli 2 was faulty and that these problems would occur. To the contrary, Mr. Poli testified that "Colex bought 12 [compact printers] from us and the problem only presented itself in the Schiffer situation." Poli Dep. at 34:17-20. Mr. Waden, too, testified that the other Poli 2 machines which Colex sold had a vibration problem but "within normal standards." Waden Dep. 90:6-23. Similarly, there is no evidence that Defendant's statements about the feasibility of repairing the Poli 2 were false when made or that it had knowledge of this falsity. As Ms. Schiffer herself testified with regard to the repair representations, "I don't think that I would say that anybody lied to me, I mean, you know, intentionally." Schiffer Dep. 122:14-16.

5)  *Conclusion*

Summary judgment on Count IV is granted as to all alleged misrepresentations except those regarding which part of the Poli 2, the processor or the printer motor or laser, made it slower than the Poli 1.

**III.    Breach of Implied Warranty**

Finally, Plaintiff alleges that Defendant breached implied warranties. Count III, Am. Compl. ¶¶ 78-85. In its July 2011 opinion, this Court refused to dismiss these claims on statute of limitations grounds, ECF No. 32 at 7, and in its March 2012 opinion, the Court held that the claims were adequately plead, 2012 WL 924380 at *11. The question now is whether, after discovery, there is evidence in the record sufficient to create a genuine dispute as to a material fact. There is not.

**a)  Choice of Law**

For contract claims, including breach of implied warranty claims, the relevant section of the Restatement of Conflicts is § 188. *Arlandson*, 792 F. Supp. 2d at 704. The Court previously applied the § 188 factors and decided that New Jersey law applies for purposes of the implied

18

NOT FOR PUBLICATION

warranty claim. 2012 WL 924380, at *10-11 (citing Rst. (2d) Conflicts § 188). Here, no new facts have emerged in discovery that would upset this determination.

**b) Because only one of the implied warranties can apply, the "ordinary purpose" warranty applies**

The implied warranty of merchantability provides that a consumer good is "fit for the ordinary purposes for which such goods are used." N.J.S.A. § 12A:2-314(2)(c). In New Jersey, an implied warranty of merchantability arises in every sale involving goods. *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 370 (1960). This warranty "simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold." *Id.* The implied warranty of fitness for a particular purpose, on the other hand, provides that, if the seller is aware of a "particular purpose" for which the goods are intended, there is "an implied warranty that the goods shall be fit for that purpose." N.J.S.A. § 12A:2-315. A "particular purpose" is "a specific use by the buyer which is peculiar to the nature of his business"; ordinary purposes are "uses which are customarily made of the goods in question." N.J.S.A. § 12A:2-315, cmt 2. The comments to the statute provide the following example: "shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains." *Id.* A seller must know that a buyer expected a product to function in a certain way or under certain circumstances to state a particular purpose claim. Privity is not required for either claim. *Duall Bldg. Restoration, Inc. v. 1143 E. Jersey Ave., Associates, Inc.*, 279 N.J. Super. 346, 355-56 (App. Div. 1995) (extending *Spring Motors Distributors, Inc., v. Ford Motor Co.*, 98 N.J. 555, 589 (1985)).

If there is only one purpose asserted, a plaintiff may not assert claims under both implied warranties. The particular purpose warranty "is not triggered when the buyer communicates to the seller that the buyer intends to use the goods for their ordinary purpose." *Ferrari v. Am.*

19

NOT FOR PUBLICATION

*Honda Motor Co., Inc.*, No. A-1532-07T2, 2009 WL 211702, at \*4 (N.J. Super. Ct. App. Div. Jan. 30, 2009). As courts in this district have repeatedly explained, New Jersey law "does not contemplate the imposition of liability under both [implied warranties] where the proponent argues that the ordinary purpose and the particular purpose are the same." *Pappalardo v. Combat Sports, Inc.*, No. 11-cv-1320 (MLC), 2011 WL 6756949, at \*10 (D.N.J. Dec. 23, 2011) (applying New Jersey law). In *Franulovic v. Coca Cola Co.*, the court dismissed a "particular purpose" claim after finding that plaintiff "ha[d] not alleged a particular purpose of [the product] that differs from its alleged ordinary purpose." No. 07-cv-539 (RMB), 2007 WL 3166953, at \*6 (D.N.J. Oct. 25, 2007). Applying New Jersey law, the court noted that, "[i]t is axiomatic that a product's ordinary purpose cannot be the same as its particular purpose." *Id.*

The circumstances in which a buyer intends to use a product can draw the line between ordinary and particular purpose. In *Duall Building Restoration*, a building owner hired a contractor to resurface a building which was "covered with a reddish-brown asphalt coating" under a contract which specified the use of "Modac," a special waterproofing paint. 279 N.J. Super at 350. Plaintiff argued that the manufacturer of the paint was aware that the paint was to be used for the particular purpose of applying it without first removing that coating and warranted that it would work anyway. *Id.* at 359. The jury answered "yes" to an interrogatory asking whether "there was a breach of the implied warranty of fitness and use [sic] of this paint as being one that could be used on any existing coating without exception or reservation of any sort." *Id.* at 353. On appeal, the parties disputed on which implied warranty, for ordinary or particular purpose, the jury had based this answer. *Id.* The court found that the jury could not have returned this finding based on the implied warranty of merchantability, because "the record would not support a finding that [the special paint] is not fit for waterproofing masonry walls, the

20

NOT FOR PUBLICATION

ordinary purpose for which it is used." *Id.* at 354. But it found the record *was* sufficient for the jury to have found that the manufacturer had made representations that the paint "was fit for the specific purpose of waterproofing brick walls from which not all of the underlying asphalt coating had been removed." *Id.* at 354, 359. *See also Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 545 (D.N.J. 1998) (finding that purchase of a boat to use in fishing tournaments is a particular purpose) (citing *Duall Bldg.*, 279 N.J. Super at 363). In short, a claim that a product can be used only under certain circumstances is cognizable only as a particular purpose claim, not as an ordinary purpose claim.

In this case, Plaintiff purchased a photograph printing and processing machine. Defendant only produces machines for professional operators like Plaintiff; processing and printing photographic prints for professional operators is "the general purpose for which [the machines are] manufactured and sold." *Henningsen*, 32 N.J. at 370. In its previous opinion, this Court said that Plaintiff had asserted claims both for "ordinary purpose" and "particular purpose." 2012 WL 924380, at *10 n.2. Though this was adequate at the pleading stage, more is required on summary judgment. Plaintiff has not introduced evidence that it intended to use the machine for a particular purpose distinct from its ordinary purpose or that the seller was aware of this purpose.

### c) Plaintiff has failed to create a genuine issue of material fact that the Poli 2 was not reasonably fit for its ordinary purpose

As in *Duall Building Restoration*, the Court here concludes that "the record would not support a finding that [Poli 2] is not fit for . . . the ordinary purpose for which it is used," 297 N.J. Super at 354. The record supports only a finding that the machine did not function in the circumstances in which Plaintiff attempted to use it. As Plaintiff's own expert witness testified, "[I]f you have a building on solid ground, that problem would not come up that Mrs. Schiffer

NOT FOR PUBLICATION

had." Waden Dep. 88:5-7. A particular purpose claim might have been cognizable if, as N.J.S.A.

§ 12A:2-315 requires, Plaintiff had shown that Defendant knew it intended to use its machine in

a setting so susceptible to vibrations that, though the Poli 1 functioned, the Poli 2 could not.

There has been no such showing.

### d) Conclusion

Plaintiff has failed to create a genuine issue of material fact that Poli 2 was not

reasonably fit for the general purpose for which manufactured. Summary judgment on Count III

is granted to Defendant.

## IV.    Damages

Defendant also argues that Plaintiff cannot recover because the damages it asserts are too

speculative for recovery and that any claim for punitive damages is barred. Def.'s Mot. for

Summ. J. at 25-27. Because the only remaining claim is for New Jersey common law fraud, the

Court applies New Jersey law.

In New Jersey, "[l]oss of profits, where based on sound fact and not on mere opinion

evidence without factual support, is recognized as a proper measure of damages if capable of

being estimated with a reasonable degree of certainty." *Stanley Co. of Am. v. Hercules Powder*

*Co.*, 16 N.J. 295, 314 (1954) (citation and quotation marks omitted). The Appellate Division has

said that "[p]ast experience of an ongoing, successful business provides a reasonable basis for

the computation of lost profits 'with a satisfactory degree of definiteness.'" *V.A.L. Floors, Inc. v.*

*Westminster Communities, Inc.*, 355 N.J. Super. 416, 425 (N.J. Super. Ct. App. Div. 2002)

(quoting *Weiss v. Revenue Bldg. & Loan Ass'n*, 116 N.J.L. 208, 212 (E & A 1935)). Granted,

even the profits of an established business can be considered too speculative for recovery if they

derive "from an activity dependent on uncertain or changing market conditions, or on chancy

business opportunities, or on promotion of untested products or entry into unknown or unviable

NOT FOR PUBLICATION

markets, or the success of a new and unproved enterprise." *Bell Atl. Network Servs., Inc. v. P.M. Video Corp.*, 322 N.J. Super. 74, 101 (App. Div. 1999) (quoting *Texas Instruments, Inc. v. Teletron Energy Management, Inc.*, 877 S.W.2d 276 (Tex.1994)).

Here, the market for professional photographic products was known and viable and Plaintiff was reasonably established in it. Though Plaintiff has not yet made a detailed showing of its damages, testimony by Ms. Schiffer sheds some light on what the damages might be. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 10-11. At the very least, the price she paid for the Poli 2 is not speculative. This is sufficient to convince the Court that the damages are of a type which are susceptible to calculation.

Regarding punitive damages, the Court finds that a question of fact remains. The punitive damages statute in New Jersey requires that a defendant act with "actual malice or accompanied by a wanton and willful disregard." N.J.S.A. § 2A:15-5.12 (West 2014). Plaintiff has produced evidence sufficient to create a genuine dispute about this material fact, such as testimony that Defendant acted with malice in misleading Plaintiff about the speed of the Poli 2. *See DeMarco v. Wal-Mart Store*, No. A-0783-10T2, 2011 WL 831527, at *4 (N.J. Super. Ct. App. Div. Mar. 11, 2011).

NOT FOR PUBLICATION

## CONCLUSION

Summary judgment is granted to Defendant as to Count I, statutory consumer fraud, and Count III, implied warranty of merchantability. Summary judgment on Count IV, common law fraud, is granted to Defendant as to all alleged misrepresentations except those regarding which part of the Poli 2, the processor or the printer motor or laser, made it slower than the Poli 1. Summary judgment as to damages is denied.

May 13, 2014

/s/ William H. Walls
United States Senior District Judge